Jason R. Naess, ISB No. 8407
PARSONS, SMITH, STONE,
LOVELAND & SHIRLEY, LLP
137 West 13th Street
P. O. Box 910
Burley, ID  83318
jason@pmt.org
Telephone: (208) 878-8382
Facsimile:  (208) 878-0146
*Attorneys for R. Wayne Klein, Chapter 11 Plan Administrator*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In Re: <br><br> J & J CHEMICAL, INC., <br><br>      Debtor. | Case No. 17-40037-JDP <br><br> Chapter 11 |
|---|---|

**MOTION TO APPROVE RULE 9019 COMPROMISE
WITH WELLS FARGO BANK, NATIONAL ASSOCIATION**

**Notice of Motion to Approve Rule 9019 Compromise with Wells Fargo Bank, National Association and Opportunity to Object and for a Hearing**

Notice is hereby given that the chapter 11 Plan Administrator in the above-captioned case has filed the above-referenced motion with the Court requesting relief as set forth therein.

No Objection.  The Court may consider this request for an order without further notice or hearing unless a party in interest files an objection within twenty-one (21) days of the date of this notice.

If an objection is not filed within the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice or hearing.

Objection.  Any objection shall set out the legal and/or factual basis for the objection.  A copy of the objection shall be served on the movant.

Hearing on Objection.  The objecting party shall also contact the Court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

    COMES NOW, R. Wayne Klein ("Plaintiff" or "Plan Administrator), the chapter 11 Plan Administrator in the above-captioned bankruptcy case, by and through counsel Jason R. Naess, and hereby requests approval of the Settlement Agreement and Release attached as Exhibit A (the "Agreement") pursuant to Rule 9019, upon the grounds the compromise contained in the Agreement is in the best interest of fulfilling the purposes of the Plan, avoids further costs

MOTION TO APPROVE COMPROMISE - 1

and expenses, and maximizes the available return to creditors. In support of this Motion, the Plan Administrator asserts as follows:

1. A chapter 11 plan in this case was confirmed on February 26, 2018. In the Plan, the Plan Administrator was appointed to run J&J Chemical, Inc. The Plan vests in the Plan Administrator certain Avoidance Actions under 11 U.S.C. §§ 544, 545, 546, 547, 548, 549, and/or 550 of the Bankruptcy Code and applicable State law, and retains jurisdiction in the Court to "adjudicate" the Avoidance Actions.

2. On September 18, 2018, the Plan Administrator commenced an avoidance action against Wells Fargo Bank, National Association ("Wells Fargo"), pursuant to §§ 544, 548, 549, and 550, seeking recovery of at least $133,762.37 in pre- and post-petition transfers that were made by J&J Chemical to Wells Fargo (the "Adversary Proceeding").

3. Wells Fargo has denied liability on, and raised defenses to, the Adversary Proceeding claims.

4. As a result of discussions between the Plan Administrator and Wells Fargo regarding the transfers, the Parties have determined it to be in their mutual best interest to amicably settle between them the disputes identified in the Adversary Proceeding. The Parties have entered an Agreement whereby Wells Fargo will pay to Plan Administrator $75,000.00 in full and complete settlement of any claims between Wells Fargo, the Plan Administrator, and J&J Chemical. In addition, Wells Fargo will release a $46,662.85 unsecured bankruptcy claim against J&J Chemical. The Parties' Agreement is attached hereto as Exhibit A.

5. The Plan Administrator believes the litigation costs and the likelihood of success associated with litigating the Adversary Proceeding justify the proposed settlement and the Agreement is beneficial to the purposes of the Plan. The Plan Administrator believes the

proposed compromise is a reasonable exercise of his business judgment and, upon analysis of the factors identified in *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986), is fair and equitable.

**ANALYSIS OF SETTLEMENT**

a. Probability of Success in Litigation:

The Plan Administrator sued Wells Fargo, under §§ 544, 548, 549, and 550 to avoid and recover certain transfers. The vast majority of the recovery sought by the Plan Administrator was in connection with the §§ 544 and 548 claims.

Pre-petition, J&J Chemical paid Jonathan Peirsol's monthly personal home mortgage payments to Wells Fargo. In addition, J&J Chemical made one payment to Wells Fargo on Peirsol's personal home mortgage post-petition. In total, the monthly payments made to Wells Fargo over the four years prior to J&J Chemical's bankruptcy filing, and the one payment made after the filing, totaled $133,762.37, with $130,669.77 attributable to what the Plan Administrator believes were fraudulent pre-petition transfers. For its part, Wells Fargo had filed a claim in the J&J Chemical bankruptcy case as Claim No. 4 for an unsecured claim for $46,622.85. The confirmed plan identifies how unsecured creditors, such as Wells Fargo, are to be treated under the plan.

As a defense to the Plan Administrator's fraudulent transfer avoidance causes of action, Wells Fargo contends that, while J&J Chemical was paying Jonathan Peirsol's personal home mortgage, Peirsol was waiving rent J&J Chemical was required to pay Peirsol under a lease on a different property owned by Peirsol. In other words, Wells Fargo's assertion is that, while J&J Chemical did not receive a direct benefit from Wells Fargo as a result of the pre-petition transfers, J&J Chemical received an indirect benefit from Peirsol as a result of the transfers. The Plan Administrator recognizes courts have found indirect benefit to a transferor as method of

providing reasonably equivalent value in exchange for what would otherwise be fraudulent transfers. In other words, there appears to be case law to support Wells Fargo's defense; the question in this case, then, would be whether Wells Fargo can carry its evidentiary burden of proving a sufficient indirect benefit to J&J Chemical to defeat the fraudulent transfer causes of action.

The Plan Administrator believes Wells Fargo would not be able to sufficiently prove an indirect benefit to J&J Chemical. At the same time, the stakes are high enough in regards to the fraudulent transfer issue in the event the Plan Administrator underestimates Wells Fargo's ability as to its burden of proof that the Plan Administrator believes settlement is appropriate. The fraudulent transfer causes of action constitute the vast majority of the transfers sought by the Plan Administrator. If Wells Fargo were somehow able to satisfy its burden of proof and show there was sufficient indirect value received by J&J Chemical as a result of the transfers to Wells Fargo, the potential recovery by the Plan Administrator would be significantly less than the $75,000.00 agreed to in the stipulation.

Another consideration factoring into the Plan Administrator's decision to compromise this dispute is that, even if Wells Fargo was unsuccessful in meeting its burden of proof, the impact of Wells Fargo's unsecured claim would need to be addressed. In a worst-case scenario, if the unsecured claim were able to be offset against an award to the Plan Administrator, which Wells Fargo asserts in its Answer it should be, the maximum recovery by the Plan Administrator would be approximately $12,000.00 more than the $75,000.00 agreed to in the settlement even if the Plan Administrator was successful in all other regards. Considering that the recovery for the reorganized company could potentially be little more than the settlement amount, even if the Plan Administrator was successful in the litigation, and given the expenses associated with

MOTION TO APPROVE COMPROMISE - 4

litigation, the Plan Administrator believes settlement of this case to be a prudent exercise of his business judgment.

As to the Plan Administrator's § 549 cause of action, he believes he would be successful in regards to that claim. At the same time, the amount sought under that cause of action is $3,092.60. In other words, while there is little question in the Plan Administrator's mind that he would be successful on that cause of action, even if he was assured success in that regard, it would yield little benefit to the reorganized company under the plan.

Given the risk of a significantly reduced recovery as a result of the magnitude of the fraudulent transfer causes of action in this case, and given that the fraudulent transfer actions will likely hinge on whether Wells Fargo can meet its burden of proof, Plan Administrator believes the compromise reached in the attached agreement is beneficial to the purposes of the plan. Not only are the risks and costs of litigation avoided, but the Plan Administrator receives $75,000.00 and Wells Fargo's unsecured claim is released.

    b. <u>Difficulties Encountered in Collection if Successful</u>:

The Plan Administrator does not anticipate there would be any difficulties in collection if he were successful in litigating the avoidable transfer issues. Wells Fargo is believed to be solvent, and the Plan Administrator believes, given the amount in controversy in the Adversary Proceeding, he would be able to recover the entire amount of any judgment from Wells Fargo.

    c. <u>Complexity of the Litigation; Litigation Expense, Inconvenience, and Delay</u>: It is not anticipated the litigation in this case would be terribly complex. The Plan Administrator was able to identify the transfers included in the Complaint from J&J Chemical's bank records, and believes the information in other financial and business records is sufficient to prove the insolvency and other requirements of the fraudulent transfer statutes. Due to the nature of the

charges sought to be recovered by the Plan Administrator in this case, and the nature of J&J Chemical, the Plan Administrator believes he would be able to prove there was no benefit to J&J Chemical as a result of the transfers to Wells Fargo. Having said that, Wells Fargo has raised a valid legal theory in defense of the Plan Administrator's fraudulent transfer cause of action. It is anticipated that, in the event the case proceeded past summary judgment to trial, significant time and expense would be spent in analyzing and responding to Wells Fargo's defenses and that the Parties would likely spend significant effort in litigating and briefing the issues. While it is not anticipated the litigation would be overly complex, given the nature of the dispute it is expected a significant effort and expense would be required to litigate this matter.

  d. <u>Paramount Interest of Creditors</u>:

The Plan Administrator believes the resolution of the dispute between the Parties in the Agreement fairly resolves the issues between the Parties while eliminating risk and the costs of litigation. Under the Agreement, the Plan Administrator will recover $75,000.00 to use as authorized under the Plan. In addition, the settlement eliminates Wells Fargo's unsecured claim. All of which allows the Plan Administrator to further the purposes of the plan.

  THEREFORE, the Plan Administrator recommends and seeks approval of the proposed compromise as a reasonable exercise of his business judgment and a fair and equitable resolution.

  DATED this 2nd day of October, 2019.

            **PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, LLP**

            _/s/ Jason R. Naess_
            Jason R. Naess
            Counsel for Wayne Klein, Chapter 11 Plan Administrator

MOTION TO APPROVE COMPROMISE - 6